RODGERS, et al v. KAJAX REALTY CO., et al.

Chancery No. 63-411-E.

RIBAULT HEIGHTS WATER & SEWER
WORKS, Inc. v. RODGERS, et al.

Law No. 63-446-L.

Circuit Court, Duval County.

December 18, 1963.

Stallings & Marr, Jacksonville, for Jimmie R. Rodgers and Jimmie Rodgers Construction Co.

Adams, Rothstein & Siegel, Jacksonville, for Kajax Realty Co., Ribault Heights Sewer & Water Works, Inc., Title and Trust Company of Florida, and Board of County Commissioners of Duval County.

J. Henry Blount, Jacksonville, for Duval County.

Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for Title and Trust Company of Florida.

FRANK H. ELMORE, Circuit Judge.

*Final decree and judgment*: This cause was tried before the court. Thereafter, briefs were submitted by counsel for the parties who also offered oral arguments. The evidence establishes, *inter alia*, these essential facts —

### Findings of fact and opinion

Kajax Realty Company is the owner of a sewer and water plant in Duval County. On June 20, 1957 it entered into two trust agreements concerning that plant with Title and Trust Company of Florida, as trustee. The trust agreements were required by FHA and VA to assure continuance and satisfactory operation of water and sewerage systems owned and operated by Kajax.

Almost two years later, on April 7, 1959, Jimmie R. Rodgers, individually, entered into an agreement with Kajax to enlarge its plant known as Ribault Heights Sewer & Water Works, Inc.

and to extend its facilities to houses built or to be built on 250 lots in a subdivision known as Lincoln Estates, owned by Rodgers. Under this agreement, Rodgers was to furnish and install at his expense the necessary pipes and appliances, these to become the property of Kajax. Rodgers agreed to build lift stations, install pumps, pressure lines, etcetera and when installed to operate and maintain them for thirty days save for pressure lines which he was to operate and maintain for one year. After these periods Kajax agreed to assume full maintenance. In consideration of the undertaking by Rodgers and for the exclusive right to furnish sewerage and water in Lincoln Estates and to charge householders for such services, Kajax agreed to supply the necessary plant and to maintain and operate it to accommodate the dwellings to be built by Rodgers.

The agreement contained provisions about defaults by the parties. Because these provisions are of the very substance of this litigation they are set forth in full —

"10. In the event that Kajax defaults in the performance of any of the covenants and agreements herein provided to be performed by it, then in such event, after 10 days written notice to Kajax (during which period Kajax may remedy such default), Rodgers shall have the right to disconnect the entire sewer and water system located upon any lands being developed by him in the Lincoln Estates area from the systems of Kajax, which may be servicing any units developed by Rodgers in the area covered by this agreement at the time of said default; that in such event Rodgers shall become the sole owner of any and all sewer and water systems located in said Lincoln Estates. All rights of Rodgers under this paragraph shall terminate when he has completed the construction and sale of all houses in said Lincoln Estates.

"11. In the event that Rodgers defaults in the performance of any of the covenants and agreements herein provided to be performed by him, then, in such event, Kajax shall have the right to enter suit against Rodgers for any and all damages that Rodgers may have caused Kajax to suffer thereby and all costs of such suit, including reasonable attorneys' fees.

\*　　\*　　\*

"13. In the event of breach of this agreement by Kajax, Rodgers shall be entitled to recover such damages as are allowed by law, including all costs of legal action and reasonable attorneys' fees."

Sometime after June, 1962 and before October 12, 1962 (the evidence being conflicting as to dates), 190 houses in Lincoln Estates then being connected with the sewer and water system, a drainage pipe emptying into a lift station cracked and raw sewage flowed from it into an open drainage ditch. On October

12th Rodgers wrote to Vinson T. Forrester, Jr., an officer of Ribault Heights Sewer & Water Works, Inc. (the operating subsidiary corporation of Kajax and a party to this litigation but not a party to the agreement of April 7, 1959) asking that repairs be made. The evidence again conflicts as to what was done and by whom to remedy the condition but on October 27th Rodgers again wrote to Forrester as president of Kajax that, having given written notice of default which had not been remedied, he, Rodgers, had become the sole owner of the sewer and water systems in Lincoln Estates and that it was his intention to disconnect these systems from that of Kajax.

Rodgers did not disconnect but continued using the facilities after necessary repairs had been made by him. Rodgers admitted that he has not paid for sewer and water cut-ins for 49 houses nor for water meter charges for 48 houses.

The board of county commissioners on January 3, 1963 granted an exclusive franchise for the operation and maintenance of a water works system for thirty years to Ribault Heights Sewer & Water Works, Inc.

On January 24, 1963 Rodgers and Jimmie Rodgers Construction Company, a corporation, as plaintiffs, filed their complaint in this court against Kajax, Ribault, Title and Trust Company of Florida and the Board of Duval County Commissioners seeking this relief —

1. A determination of whether or not the defendant Kajax breached the agreement of April 7, 1959.

2. If so, a declaration of the plaintiffs' rights under that agreement; and damages, costs and attorneys' fees.

3. Permission to disconnect the sewerage and water systems serving Lincoln Estates from the system of Kajax.

4. A declaration that the plaintiff Rodgers is the sole owner of such system; and restraint of defendant Kajax from interfering in its operation.

5. An order requiring the board of county commissioners of Duval County to cancel the franchise of January 3, 1963 granted to the defendant Ribault.

The defendants Kajax and Ribault answered the complaint and counterclaimed to enjoin the plaintiffs from interfering with the performance of the agreement of April 7, 1959 and the operation of the sewer and water systems and for other relief. Motion for summary final decree by Kajax and Ribault was heard and denied. The defendants board of county commissioners and Title and Trust Company have answered the complaint but have taken no active part in the litigation.

On March 15, 1963 Ribault filed an action at law in this court against Rodgers and Jimmie Rodgers Construction Company for moneys alleged to be due for water cut-ins.

That action was reassigned from division "D" of this court to this division and evidence in the two cases was heard concurrently.

Determination of the plaintiff Rodgers' rights under the agreement of April 7, 1959 rests primarily upon the answer to the question of whether or not that plaintiff is entitled to invoke the aid of equity to enforce the forfeiture called for in paragraph 10 of that agreement.

In that provision one notes a series of contingencies, the first of which is default by Kajax of the performance of any covenant. This triggers ten days' notice by Rodgers to Kajax and gives Rodgers the right, if Kajax fails to remedy the default, to disconnect the sewerage and water systems on lands being developed by him from the systems of Kajax. The second contingency is that when Rodgers has availed himself of the right given by the first, that is, that of disconnection, he shall become owner of the systems in Lincoln Estates. The termination provision is not in issue as Rodgers had not completed construction and sale of all houses in Lincoln Estates.

But this provision has been interpreted in another manner by Rodgers, which is that default alone when not timely remedied after notice, involves forfeiture. Under that construction Rodgers insists that when he had another system ready to connect with he had fulfilled his contractual duty. (That he did have such a system was disputed and the evidence is not clear and convincing that he did).

But it is not necessary to determine which of these constructions, if either, is correct. The bare existence of ambiguity precludes the working of a forfeiture, if, indeed, it may be enforced in equity in any event. It is in the nature of things that he who seeks to exact a penalty must rely, like Shylock, on the letter of the contract to support his demand. A forfeiture will not be declared on a doubtful construction. Almost any countervailing equity is adequate to defeat a complaint to enforce a forfeiture.

In the article on Penalties and Forfeitures appearing in 24 Florida Jurisprudence at pages 561-562 it is stated —

"Forfeiture clauses are not favored in either law or equity, and must be strictly construed . . . Thus, where a contract is capable of being so construed as either to provide for a forfeiture or not to provide for one, the courts uniformly construe the contract to avoid the forfeiture."

And in the article on Contracts in the same work, volume 7 at page 254, the law is summarized in these words —

"Forfeitures, not being favored in equity, will not be enforced if couched in ambiguous language. Where a contract is ambiguous and is capable of being so construed as to provide for a forfeiture or against it, the courts will construe the contract so as to avoid the forfeiture."

The general doctrine is well stated by Pomeroy, Equity Jurisprudence, volume 2, Fifth Edition (1941), at page 459 —

"When will a court of equity by its decree actively enforce or carry into effect a forfeiture? The general answer to this question is easy and clear. It is a well-settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture. The few apparent exceptions to this doctrine are not real exceptions, since they all depend upon other rules and principles."

Neither the evidence nor the law supports the invasion by this court of the administrative powers of the county commissioners of Duval County, Florida.

### As to relief prayed for by the defendants in their counterclaim

1. Neither *allegata* nor *probata* sufficiently show that irreparable injury would result if the plaintiffs Rodgers, individual and corporation, are not restrained from interference with the performance of the agreement of April 7, 1959. 17 Florida Jurisprudence, Injunctions, §21.

2. The evidence does not support the granting of a mandatory injunction ordering the plaintiffs Rodgers to convey certain properties to Ribault Heights Sewer & Water Works, Inc. 17 Florida Jurisprudence, Injunctions, §12.

3. The defendants Kajax and Ribault are not entitled to recover attorney fees except as to money damages.

### As to attorney fees

Attorney fees are awarded by virtue of statute or contract. No statute governs here. The agreement of April 7, 1959 has two provisions about attorney's fees. They are contained in paragraphs 11 and 13 set forth in full above. The former states when the defendant may recover an attorney fee from the plaintiff; the latter, the converse situation. Both are tied to recovery

of damages. Neither contemplates an award for raising or defending an action for declaration of rights or other equitable relief.

The plaintiffs have proved that they have suffered damages of $426 for repairs paid by Rodgers in October, 1962.

Ribault has proved by a preponderance of the evidence that it is entitled to receive from the defendants Rodgers in the law case the sum of $6,370 for sewer and water cut-in charges and the sum of $576 for water meter charges, a total amount of $6,946.

Regardless of time spent or other recognized criteria by which the value of legal services is determined, it would be unconscionable in a court of equity to allow any party an award of attorney fees for the recovery of contractual damages except as that award may be consonant with the amount of damages proved and recovered. The most generous measure short of becoming an unreasonable penalty would be fifty per cent of the amount recovered. That is too much. Each party will be awarded an amount equal to forty per cent of the money damages recovered.

Of course, the defendants are entitled to recover no attorney fee for defending the action for a declaration of rights. Only Ribault, as plaintiff in the action at law, is entitled to recover an attorney fee in the award of damages.

### Conclusion of law

The defendant Kajax Realty Company breached the agreement of April 7, 1959 by failing to maintain in good operating condition a pipe in the pressure line located near a lift station in Unit 2 of Lincoln Estates, which had been installed and in use for more than one year.

It is, therefore, ordered, adjudged and decreed —

(1) The defendant Kajax Realty Company, a corporation, did breach the agreement of April 7, 1959.

(2) The plaintiffs Jimmie R. Rodgers and Jimmie Rodgers Construction Company, a corporation, are entitled to no relief against any of the parties to this cause except the recovery of money damages against the defendant Ribault Heights Sewer & Water Works, Inc., a corporation.

(3) The plaintiff Jimmie R. Rodgers shall have and recover of and from the defendant Ribault Heights Sewer & Water Works, Inc., a corporation, the sum of $426 together with attor-

ney's fees in the amount of $170.40 and his costs in this behalf lawfully expended and to be taxed on motion, for which let execution issue.

(4) The defendant Ribault Heights Sewer & Water Works, Inc., a corporation, shall have and recover of and from the plaintiffs Jimmie R. Rodgers, individually, and Jimmie Rodgers Construction Company, a corporation, the sum of $6,946 together with attorney's fees of $2,778.40 and its costs in this behalf lawfully expended and to be taxed on motion, for which let execution issue.

(5) The defendants Kajax Realty Company, a corporation, and Ribault Heights Sewer & Water Works, Inc., a corporation, on their counterclaim are entitled to no relief against any of the parties to this cause.